**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

SHAIDON E. BLAKE,

    Plaintiff,

    v.

BRANDON SCOTT,
BALTIMORE POLICE DEPT.,
IVAN BATES,
BRIAN FISH,
PATRICIA SMITH,
DERRELL MERRICK,
SECRETARY OF DPSCS,

    Defendants.

Civil Action No.:  SAG-25-595

**MEMORANDUM**

Self-represented Plaintiff Shaidon E. Blake has filed an Amended Complaint pursuant to this Court's Order directing him to do so.  ECF No. 6.  The Court's Order noted that Blake's original Complaint was deficient because "the claims are so generalized, extend back as far as seven years, include claims that either were previously litigated or could have been litigated, and include claims that implicate the validity of Blake's conviction."  ECF No. 4 at 2.  The original pleading was summarized as follows:

> The forty-five-page complaint concerns multiple claims, many of which Blake has previously litigated in this Court. *See Blake v. Green*, Civ. Action PWG-20-3563 (D. Md. 2020) (alleging ICC transfer to Kansas was retaliatory). Other claims Blake raises concern the validity of his conviction which has not been overturned on appeal or post-conviction. *See* ECF No. 1 at 12 (describing claim against Brian Fish as committing fraud on the courts to secure criminal conviction); *id*. at 13 (claim against Det. Merrick stating he perjured himself at Blake's criminal trial); *id*. at 14 (claim against Det. Fata that he staged the crime scene). Blake's claim against the Baltimore City Police Department, the City of Baltimore, and the Baltimore Mayor are vague and appear to be claims raised on behalf of others. *Id*. at 14-16 (alleging police operate as a gestapo organization; suggesting that policies should have been changed so that fatal

> shootings would have decreased; asserting that all mayors are responsible for his
> injury due to failed policy in connection with employee review).

ECF No. 4 at 1-2.  Review of the Amended Complaint establishes that Blake has not cured the defects in his allegations and, therefore, for the reasons stated below, the Amended Complaint must be dismissed.  The pending Motion to Proceed in Forma Pauperis (ECF No. 2) shall be granted.

Blake's claim against Mayor Brandon Scott is based on a theory of *respondeat superior* for what Blake views as failed policies governing the Baltimore City Police Department which "are so flawed as to aid plaintiff's injury."  ECF No. 6 at 5.  He states that the "continuous harm doctrine applies" to this claim and states that he continues to require segregated confinement in the Illinois prison where he is currently confined due to the "unsubstantiated" reports that he came to Baltimore as a hitman to kill Baltimore Bloods.  *Id.*  He asserts that these reports were started by the Baltimore Police.  *Id.*

This claim fails both because *respondeat superior* does not apply in §1983 suits, *see Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983) and because the claim is time-barred.  Blake was convicted of the 2006 second-degree murder of Terrance Randolph, a member of the Baltimore Bloods; appellate review of his conviction was finalized on June 19, 2009, and post-conviction review was finalized on December 19, 2012.  *See Blake v. Wolf*, *et al.*, Civil Action PWG-13-1160 (D. Md. 2013).  Setting aside for the moment that litigating a claim that impugns the validity of a conviction that has not been overturned on appeal is barred by the holding in *Heck v. Humphrey*, 512 U.S. 477, 487 (1994),[1] the alleged statements by Baltimore Police that Blake was a hitman took place at least 19 years ago.  Section 1983 provides a federal cause of action, but in several respects relevant here, federal law looks to the

---

[1] *Heck* held that 42 U.S.C. § 1983 claims impugning the legality of a criminal conviction are not cognizable unless the conviction has been reversed.

law of the State in which the cause of action arose.  This is so for the length of the statute of limitations: it is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989)).  In Maryland, the applicable statute of limitations is three years from the date of the occurrence.  *See* Md. Code Ann., Cts & Jud. Proc. Code § 5-101.  The question of when a cause of action has accrued under § 1983 is a federal question.  *See Nassim v. Md. House of Correction*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).  The date of accrual occurs "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action."  *Id*.  Blake had reason to know that the Baltimore Police believed he came to Baltimore as an "enforcer" for the Bloods gang in 2006, when Detective Darrell Merrick testified at his trial that he met with Blake and Blake admitted that he was from California, was a member of the Bloods, and was in Baltimore to straighten out members who were "not representing the Bloods the way they should be."  *Wolf*, Civil Action PWG-13-1160, ECF No. 39 at 2, citing Apr. 4, 2007 Ct. Tr. 10-132 Supp. Resp. Ex. 11.  This claim is therefore dismissed.

Likewise, the claim against the Baltimore City Police Department must be dismissed because the Baltimore City Police Department is not a person amenable to suit under §1983. 42 U.S.C. § 1983 states that:

> "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured . . ."  (emphasis supplied).

The claim against the Police Department must be dismissed.

Blake's claim against Detective Merrick for his "willingness to testify falsely under oath" is also barred by the holding in *Heck* and must be dismissed.  Assuming that Blake could prove

that "Detective Merrick and Fata's willingness to testify falsely under oath . . . substantiate[s] [his] claim of widespread customs, longstanding and deeply embedded as to constitute policy and routine practice," such evidence, if any exists, would impugn his conviction.  Blake may not utilize civil litigation to collaterally attack his convictions.

For his claim against the Secretary of the Department of Public Safety and Correctional Services, Blake alleges that supervisory responsibility lies with the Secretary "due to failed policy that governs the Interstate Corrections Compact program."  ECF No. 6 at 9.  He explains that Maryland as the sending State labels him as "Do Not Disclose" in all inmate locators but allows low-level Department of Correction ("DOC") employees access to his file which discloses the reason for his transfer.  *Id.*  Those low-level employees then make the receiving State aware of the reason for Blake's transfer.  *Id.*  Blake believes that only DOC headquarters should have access to that information and that the Secretary is responsible for failing to enact that policy.  *Id.* Blake then faults the Maryland DOC for sending him to Kansas along with other Maryland prisoners who knew who he was, which meant other Kansas prisoners learned who he was, resulting in a need for segregated housing. *Id.* at 10-11.

As noted in this Court's initial Order, Blake is not permitted to litigate claims that were either litigated in a prior civil suit or that could have been raised in a prior civil suit but were not. Here, the claims regarding his safety in Kansas, the relative wisdom of sending him to Kansas, the steps taken when he was sent to Kansas, and the conditions of his confinement when he was in Kansas were litigated in a prior civil suit.  *See Blake v. Green*, Civil Action PWG-20-3563 (D. Md. 2020), ECF No. 18 (Mem. Op.).  In that case, it was established that Blake was confined to segregation largely due to his violation of prison disciplinary rules in the Kansas Division of Correction and not because of concerns for his safety.  *Id.* at 3-11 (summarizing disciplinary

record).  Nevertheless, Blake's claim that his confinement to long-term segregation and his transfer

to Kansas violated due process and his Eighth Amendment rights was addressed by the Court:

> There is no evidence here that Blake has been subjected to conditions of
> confinement that are atypical and substantially harsh. His designation on CBB
> status directly relates to his chronic violation of prison rules, and he is provided
> a monthly review of his long-term segregation assignment, similar to the
> monthly reviews provided to inmates confined to administrative segregation in
> Maryland prisons. Blake's confinement to segregation does not approach the
> draconian conditions condemned by the Supreme Court in Wilkinson, nor does
> it run afoul of the due process protections he would otherwise receive if confined
> in Maryland.

*Id*. at 18.  Blake also claimed that his transfer to Kansas via the Interstate Corrections Compact

was retaliatory.  That claim failed because the record evidence did not support a finding that his

protected conduct was a substantial or motivating factor for his transfer; Maryland officials

provided a legitimate rationale to support Blake's involuntary transfer unrelated to his resort to the

courts.  *Id*. at 20-22.  His attempt, four years after that litigation ended, to add a claim that the

entire policy for Interstate Corrections Compact transfers is flawed must fail.  Under the doctrine

of *res judicata*, a final judgment on the merits in an earlier decision precludes the parties from

relitigating issues that were raised or *could have been raised* during that action.  *Pueschel v. United

States*, 369 F.3d 345, 354 (4th Cir. 2004). (emphasis supplied).

In his claim against State's Attorney Ivan Bates, Blake seemingly assigns fault to Bates

because Assistant State's Attorney Brian Fish and former State's Attorney Patricia Jessamy

conducted a campaign that "created a false narrative of the plaintiff" which led to him being

assaulted and stabbed.  ECF No. 6 at 11.  At some unknown time, on an undisclosed date, Blake

claims Fish and Jessamy held a press conference where they "spread the narrative" that he was a

hitman killing Bloods, making it impossible for Blake to be housed in Maryland.  *Id*.  In Blake's

view, Bates is now liable for "failure to perform a ministerial duty" because Blake informed the

State's Attorney's office that this "false narrative" caused him an injury. *Id*. at 11-12. The claim against Bates and Fish is frivolous and must be dismissed. There simply is no viable claim stated and no imaginable "policy" that Bates has failed to correct or rectify that continues to cause Blake or anyone else harm in the manner described.

The claim against Patricia Smith concerns her alleged failure to protect Blake when she was employed as the DPSCS ICC coordinator and contact person. ECF No. 6 at 13. In that capacity, Blake alleges that Smith received monthly progress reports from the receiving state that included any incidents that occurred such as serious incidents, use of force reports, forced medications, and hospitalizations. *Id*. Blake states that Smith was aware of "these exact incidents" but "did nothing to protect" him. *Id*. He does not state what Smith should have done when she received those reports, but states that when he requested to be returned to Maryland, she refused the request, stating his return from Kansas posed a threat to his safety. *Id*. Blake's claim against Smith rehashes the claims he raised in Civil Action PWG-20-3563, in which he claimed, *inter alia,* that he had been forcibly medicated, that there was a disciplinary charge against him for making an unauthorized three-way call to Ms. Smith, that the basis for his ICC transfer was unwarranted, and that he had been hospitalized for a suspected heart issue. *See Green*, Civil Action PWG-20-3563, ECF No. 18 at 2-15; 17-22. Blake will not be permitted to relitigate those same claims in the context of this civil action.

Lastly, despite being directed to provide a short and plain statement of his claims that included dates of the events complained of, Blake has failed to comply with that directive. Instead, he has provided another inscrutable pleading that alleges Defendants have failed to address the existence of undefined, and undescribed phantom policies that are somehow continuously causing him constitutional injury some 19 years after his conviction.

The Amended Complaint fails to state a claim upon which relief may be granted and must be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  Blake is forewarned that his right to file a complaint in federal court without first paying the filing fee ($405) will be greatly curtailed if he has three actions or appeals dismissed under the provisions of 28 U.S.C. §§ 1915(e)(2)(B)(i)(ii) and 1915A(b)(1) as frivolous, malicious, or for failure to state a claim while he is incarcerated.  *See* 28 U.S.C. § 1915(g).

A separate Order follows.

May 8, 2025
Date

/s/
Stephanie A. Gallagher
United States District Judge